Your docket this morning is United States v. Cawthon. I don't want to mispronounce your name. Nelson Ebon. May it please the court, my name is Nelson Ebon and I represent the appellant Eric Cawthon. The district court committed reversible error by refusing to instruct the jury on the defense of entrapment. In light of this court's precedent in United States v. Theogene and United States v. Bradfield, this court must vacate Cawthon's conviction and remand for a new trial with an entrapment instruction in the court's charge. In the district court and in this court, the government claims that Cawthon failed to make a prima facie showing of entrapment. However, the government is wrong. Viewing the evidence in the light most favorable to Cawthon, there was sufficient evidence that Cawthon lacked predisposition. For instance, Cawthon had no criminal history. There's no evidence that Cawthon ever before attempted to entice a minor to engage in sexual activity. There's also evidence that Cawthon never texted with his girlfriend's daughter. There's also evidence that Cawthon was not familiar with how teenagers text. There's also evidence that Cawthon asked his girlfriend to call him daddy, but his girlfriend's daughter always called him Eric. There's also evidence that Mr. Cawthon talked to seven adults on the internet that pretended to be 14, and when he met one, she was actually an adult. And then most importantly, at the trial, Cawthon testified that he was not predisposed to commit the crime he was accused of. For instance, he was asked at point blank, did you ever intend to have any type of sex with a 14-year-old? He responded, no, sir. Based on this, all of the evidence and the totality, it was controverted whether or not Mr. Cawthon had predisposition to commit the crime he was accused of. The government has put a lot of emphasis on the fact that Mr. Cawthon was enthusiastic in response to the government's investigation. However, this enthusiasm can be negated by Mr. Cawthon's explanation, which he gave at trial. At trial, he explained that he was not predisposed. He explained that he didn't actually believe that the government agent, that he didn't even believe that whoever he was communicating with was actually underage. And because of this, a reasonable jury could conclude that Cawthon's enthusiasm did not by itself demonstrate that. Why didn't he believe the person was underage? Did he offer a reason for why he didn't believe she was underage? Well, yes, he did. He had engaged ... Is that the prior incident where it turned out that somebody who had said they were underage happened to be an adult prostitute? Yes, Your Honor. All right. But in this instance, she said, I'm 14. That's right. And then there was some back and forth, and she said again, I'll be 15 shortly or before too long, something like that. Yes, Your Honor. So you got, I'm 14, and you got a confirmation, again, that I'm only 14. And he continued the conversation. Isn't that what happened? Yes, Your Honor. All right. Probably an enormous number of these 24-22 prosecutions are built on stings, right? Yes, Your Honor. Do you have any case in the context of 24-22 when it was reversible error not to give a pattern instruction on entrapment? Because every single one is going to be the government taking initiative with somebody who's unknown on the Internet. Do you have any case in the context of 24-22 where it was reversible error not to give entrapment? Your Honor, I don't. Not in the federal system. No. There are equivalent charges that have been made in the state courts, and it's been found to be reversible error in some of the state court cases that I've cited in the Gulf Lawrence Briefing. For you to get the instruction, you've got to prove no predisposition and government inducement. Yes, Your Honor. The harder, I mean, the predisposition world is a little odd just by virtue of the way these things happen on the Internet. These are completely unknown people. But it would seem to me on the inducement front, this isn't a very sympathetic case, because your client, both in his statement to the police and then in his testimony, didn't say, oh, I did the crime, but I was just overborne by the government trapping me. Instead, on both occasions, the post-arrest statement and at trial, he said, you know, this was a fantasy. I was just engaged in chatter or more. So it didn't seem like at any point there was reluctance on his part. Where's the best aspect either on the recorded statement, in the post-arrest statement, or in his testimony that he was being coerced, his will was being overborne? Can you point to any example of that? Your Honor, he was enthusiastic. Why isn't that the end of the inquiry? I'm sorry? Why isn't, if he's availing himself eagerly, enthusiastically of an opportunity, telling the little girl what to call him, what to wear, why isn't that the end of the inquiry? There is no pattern instruction. You don't get an entrapment. You're not admitting to the crime. You're saying you thought it was a joke and you were going to walk away from it. There's no coercion by the government. That's my problem. In these attempt cases, you have to prove both specific intent and a substantial step. And just being, the government being persistent over and over, just like in the Theogene case, can be enough. Why was the government persistent? The government was persistent by, they originally suggested a meeting with Mr. Cawthorn, and then repeatedly that I thought he chose the truck stop. Originally Did he tell what he felt was the young woman where to meet him, actually? Did he make that plan? The government originally made that plan. Okay. Well, I thought the government made a plan and then he just changed the location. Isn't that what happened? They made a plan and then he suggested an alternate location. That's correct. Apparently, the government originally suggested the airport truck stop, and then he suggested the pilot truck stop. But there's, Trooper Reynoso, during the conversation that she had in Exhibit 5, she said, do you still want to meet up tonight? Cawthorn, if you want to. Trooper Reynoso said yeah. And then during the conversation that Trooper Reynoso had with Mr. Cawthorn, she again emphasized, I think we can meet tonight. And then later in the conversation, she again says, I think we should meet. Over and over, she's persistently urging Mr. Cawthorn to meet with her. But once she says I'm 14, he doesn't say, well, that's the end of it, or I'm going to call the police. I thought there was testimony in this record that a lot of that persistence is the government trying to lay down the rules. Are you sure you know I'm 14? Are you sure you know I can't drive? In other words, their persistence in part is to weed out the vast majority of people that then say, oh, I don't want to commit a crime. The government, apparently they followed their typical protocol in order to try to weed out a crime. But at the same time, the government was very persistent in this case. And that can be enough to be inducement to warrant an entrapment instruction, especially if you view it in the light most favorable to Cawthorn. And the district court did not view the evidence in the light most favorable to Cawthorn. Does that protocol, would that require an entrapment case, an entrapment instruction in every case? It depends upon the predisposition. For instance, if the defendant that is being investigated has prior criminal record of attempt to entice a minor. But these are happening in real time. They don't know who these people on the Internet are. There's really no way they'd be able to ascertain what his background is, right, to see if he had a felony arrest record? You're right. You're right. But by trial, I mean, I'm saying . . . By trial. I'm just saying, would that . . . does the protocol that has been followed, does that meet the prong for inducement in every case? In other words, then you . . . Not in every case. What is it about this protocol that makes it different from the mine run case like this? Well, Your Honor, I'm not completely familiar with the government's protocol in all the cases. Assuming that this is the standard protocol, is this enough? Assuming you've got the other prong, predisposition, to require no predisposition? If they're being persistent, and keep on urging him to commit this act, then yes. As I mentioned earlier, for this attempt crime, there has to be proof of specific intent, and there also has to be substantial state . . . substantial step. Most all the cases across the nation say that a substantial step occurs when you start planning a meeting, or make specific plans for a meeting. In this case, the government initiated the idea of the meeting, so they took the substantial step on behalf of Mr. Coughlin. And then they started planning the meeting. For instance, first suggesting the airport truck stop. He was enthusiastic, but as I explained, that was negated by the fact that he was under a misunderstanding about what this meeting was all about. He didn't truly believe that this was a 14-year-old girl. But there is a high level of inconsistency in defenses there. If he didn't have the scienter, didn't believe she was 14, it's hard to at the same time say he was coerced into enticing a minor. You can . . . what's your best case that you can have such an inconsistent defense theory? Well, he can . . . he can . . . Mr. Coughlin can present inconsistent defenses. I know. Well, what's the best case you've got in the context of entrapment for that? You can deny scienter, but at the same time say the government compelled you into committing that. The best case is that perhaps he didn't have intent initially. Once he heard it was 14, he did. That's the argument. Once he knew it was 14, the government sort of forced him to keep going. That's the theory. There is testimony in the record that he felt like he didn't know that he had a problem until he was actually driving to the truck stop. So, possibly, maybe then he had intent when he was driving to . . . Well, didn't she ask him about $10 for the friend, and he said, yes, I've got the $10, and he showed up at the truck stop or near it with the $10 in his hand? Yes, Your Honor. There's a possibility that he may have had intent by that point. But Mr. Cawthorn was harmed in this case because if he had an entrapment instruction, they'd have to show not only intent but predisposition. And because of that, he was harmed by the fact that he didn't have this entrapment instruction because in addition to intent, the government would have also had to prove predisposition, and it would have been very difficult for the government to do that in this case. Well, didn't he admit to about seven other conversations with people who had said they were underage? Yes, Your Honor. But when he apparently never met six out of the seven, and the one that he did meet actually turned out to be an adult. But he didn't know that until he got there. That's correct, Your Honor. But apparently when . . . I'm not suggesting that people should engage in this sort of activity, but apparently when people are looking for casual sex on the Internet, there's a lot of people on the Internet who are not who they say that they are. For instance, in the Cosmo v. State case from Georgia . . . But, Counsel, I mean, in this case, he received an age regress photo, which was age regress to look like a 14-year-old. He had a telephone conversation, and they used a voice coder to have the voice sound like the voice of a teenager. Isn't that right? Yes, Your Honor. And despite all that, you maintain that he believed that this was somebody who was pretending to be a teenager. Yes, Your Honor. But there was sufficient evidence that the jury could have concluded that he didn't have predisposition. As far as inducement, again, the record shows that the government originally suggested a meeting. For instance, Agent Knight in a text said, very bored, want to get out and do something, prodding him to take the substantial step which is necessary for the attempt crime. And then the government agents arranged the meeting by suggesting . . . Counsel, you've wasted your time. You saved some time. Thank you, Your Honors. Good morning. May it please the Court, Mr. Ewald. My name is Austin Berry, and I represent the United States of America in connection with this criminal appeal. I know it is sometimes of interest to the panel that I was the prosecutor below, so to the extent that you have any questions geared along those lines, I'm happy to try to answer them. To get to Judge Higginson's point about the inducement fact here, and Mr. Ewald articulating that the government, the undercover agents, were persistent in trying to get him to meet, I think it's important to think about the 2422B crime. That crime is not complete when he shows up. That crime is complete before that. And in fact, our attempt to try to get him to a meeting location is often geared around exactly what Your Honor alluded to, which is we have no idea who he is until we can actually see him. So the meeting is actually trying to identify him. The crime is complete before that. The crime is complete, for example, during the phone call when he says, I want you to show up at this room, we're going to take off all your clothes, you're going to call me daddy, I don't want you to wear panties, wear a skirt, no panties, all those sorts of things. That is sufficient for a completion of a 2422B crime. Because it's an attempt. Correct. I mean, that was sort of the area of curiosity I had. I was looking for my transcript of the minute. Yeah, here we go. Very early on in the conversation, I guess according to protocol, the FBI undercover chatterer says I can't drive. So he says, how old are you? And Ashley says 14. Is any statement after that by him that's other than, oh, well, then this is over? Consummation of the crime? I guess you'd say it is, right? It's an attempt. Once he continues any seeking to engage with her, that's the attempt crime there. Sure. I would, while I would love for that to be the completion of it, I think we would still have to demonstrate that the purpose of talking to her was of some sort of sexual nature. Right. And so certainly we get to that by the phone call at the very least. But I think, yes, the fact that they're meeting in a singles location. But before you go to all that, that's my concern here, which is this is sort of turning upside down Jacobson. In other words, how do you, when do you measure the moment when entrapment would exist? Because the government gets onto this adult Internet site, right? Correct. So there's nothing wrong with people, criminally at least, being in a women for men. Correct. Government gets there. So perfectly innocently, I suppose, gentleman starts to talk with the FBI undercover chatterer. And then at some point quickly the government says, and I can't drive. And you're saying almost anything after that in an Internet freewheeling environment, if he doesn't shut the phone call down, is a complete unit of prosecution, attempt to induce or entice a minor for sexual activity. Any statement involving a desire sexually would be a crime. Correct. To the extent you go that one step further. But then clearly at that moment you have no idea if the man has predisposition, right? There's no way to know that. This is a person in an Internet. He's in an adult room. And you've gotten him to continue a conversation. So the question is who's inducing? And I guess my concern is the government's being incredibly sophisticated here. Admittedly, it happens quickly. They voice regress. They send a photo that's altered. They initiate, set up the posting thing. In that context, why not take the pattern instruction? I guess especially since you're a trial prosecutor, you're risking reversal of conviction, and he's got to admit he did the crime in order to get it. So your theory here is there was no evidence of it. Why not just take the pattern instruction? Let the jury decide if his will was overborne by this fast, freewheeling Internet environment. Sure. Good question. Why not just do it, right? And I think that what is helpful to look at, and the defense certainly likes that argument in the sense that they say, well, look, here are a handful of cases where the instruction was, in fact, given on similar facts. But, of course, they're not. Those aren't appellate decisions analyzing what we're doing here today and what this court is charged with doing. And so what we look at is, so, for example, Soto Enamorado, which is a Fifth Circuit case, unpublished, that cites two Davila Neeves in the First Circuit as well as Young in the Eighth Circuit, another case, Myers, that I cited in my brief, also from the Eighth Circuit, and then an additional case, Sixth Circuit case from 2011, Nope, also cited in my brief. All of those are appellate decisions reviewing the denial of an entrapment instruction on virtually identical facts. Certainly, we could take a tactical decision, Judge Higginson, and say, well, we're just going to go ahead and accept the entrapment instruction. And that's what it looks like happens occasionally, for example, in the cases that the defense cites, where the instruction was given, the defendant was convicted, and there was an appellate issue on something else, right? Because the government's not going to cross-appeal the granting of an entrapment instruction when we win the case and the defendant is convicted. And so those cases don't address those issues. We certainly could take that tactical decision, and that certainly is talked about in our office, just as a practical matter, as to whether to make that tactical move or not. But, of course, what it does is it ends up creating a super element, an element that's not in 2422B. It imposes on us another beyond a reasonable doubt element that we are not charged with, that we don't have to do in the statute. And I think what's really interesting is that the cases that the defendant cites, you know, each of those is a denial of the entrapment instruction. So we have no idea, right, what would the jury have done if given that instruction. So we're in this sort of theoretical world. Well, it changes the whole focus of the trial, for starters. Sure. Right. And so my point is that what's interesting about the cases the defendant cites is basically it's a controlled experiment, right? You have the cases that the defendant cites where the instruction was given and the jury still found the defendant guilty because beyond a reasonable doubt, beyond a reasonable doubt, found that there was no entrapment. Then you have the cases that the United States has cited, Sordo, Davila, all those, where the entrapment instruction was not given, so we're in this theoretical world as we don't believe that there was a prima facie proof sufficient that a jury could have found beyond a reasonable doubt. And that's borne out by the defendant's cases, that when it is given, the defense, the defendant is convicted anyways. Now that comes back to you, and you can say, well, as a practical matter, why not just give it? But I think what the better— I'm not saying it's a practical matter. I'm saying it is a legally available defense. Admittedly, the law is all over the place out there, but if you go back to the Supreme Court ruling, is it Jacobson or is it Jacobs? I forget. Yes, sir. That was sort of this world but just 15, 20 years ago where postal investigators would try to bring the videos of child pornography. Don't you want to buy these? Don't you want to buy these? The second he buys them, the Supreme Court said, no, you induced him. You overbore his will. Well, now it's all happening on the Internet. And so I guess here's the specific legal question. Why isn't it when the government goes into an adult chat room masquerading, why isn't that the government creating, inducing the individual? In other words, he isn't availing himself of an opportunity. The government's creating that opportunity. It's at least a line. The line between opportunity, artifice versus inducement is sort of blurred. And in that context, it's just you're rolling the dice a little. You don't deny that the instruction he requested was the pattern one. So what I would point to is, Your Honor, in 2013, Your Honor, Judge Higginson in Nelson wrote an opinion on the entrapment instruction. It was not in the context of 2422B. It was a bribery campaign contribution context. And what the courts, and Judge Owen as well in Gilmore was a per curiam opinion. I don't know who wrote it, but I know Your Honor wrote the Nelson opinion. And there's a plus factor, essentially. The plus factor being exactly what you alluded to when Mr. Evol was up here, which is there's got to be some kind of threat or coercion or power imbalance, something there to indicate that the government is doing more than providing an opportunity. So if you didn't go by your guidelines, if the FBI just kept insisting and didn't tell them 14 until the very end, something like that might? Right, and that's absolutely why we do that. And that's why you see us say it twice. It's a text message. Why would she say, I'm 15. How old did you say you are again? I'm almost 15. Why say that a second time? It's a text message. You just scroll up. It's not like you didn't hear it. You see it. We're doing that as a protocol because we're not interested in catching people who are just out there on the adult site trying to meet up and cheat on their wives or their girlfriends, right? That's not our point. It's a waste of resources. It's not what we're going after, and it's not a crime. What I would encourage the court to go back, even from the text message, the ad on the site itself, right, there's no juvenile site where we can go out and post on, right? That's the very point of this is that a lot of these apps and websites have an age requirement. We have to say we're 18 at the very first to post, right? But then we immediately tell them we're not really 18. If you look at the ad, she says, I'm home alone, right? That's the closest thing we can say without a website bouncing us for obvious being a child. And what we have discovered, of course, is that people who are interested in this, for example, people who have done this seven times before are keyed in to those kinds of words. And so when you see home alone and he asks, do you have a car, the very first thing suggests that he is already keyed in on the idea that she might be underage. Then she says, no, I can't drive, and he asks her age. And there it is explicit in black and white, I'm 14. Shortly thereafter, she says, I'm 15, almost 15, and then we're off to the races at that point because he's on notice at least twice explicitly and arguably three times in the context of the ad itself saying I'm home alone in his indication that, hey, can you drive? He already knows that. Counsel, I'm interested in this way back in your response, something about it placing an extra burden on the government. It is an entrapment and it's an affirmative defense. Yes, sir. The defendant has to make some kind of a prima facie showing of the lack of predisposition and then government involvement, inducement, that kind of thing. What's the burden on you? Or you didn't, and maybe I misheard, maybe you didn't. No, no, I think that's fair, and maybe I didn't articulate it very well. What I mean is Judge Higginson, I believe, was getting at the point of why fight the entrapment instruction in the first instance. Why did I file it in limine and fight so hard to keep it out, right? Why not just let the judge instruct the jury on entrapment? And because if I do that, then that creates an extra element. At that point, the defendant has to do the prima facie showing to get the instruction. Once the trial court finds, if, for example, Judge Juneau had found, yes, prima facie has been met, therefore I will instruct the jury on entrapment, the burden then shifts. There's a burden shifting regime under entrapment, and then it shifts back to the United States. The defense continues to get to sit there and put on no case or no argument if they want, and the United States then has to prove all of the elements of 2422B, just as we would anyways, plus we have to prove beyond reasonable doubt that he was not entrapped. Will you address predisposition? Yes, ma'am. With regard to the predisposition, I would point the court, you know, the easiest thing to do, of course, is for this court to look at two exhibits, right? Government's Exhibit 4 and Government's Exhibit 5. Exhibit 4 are the text messages. They're in black and white, very easy to review. And Exhibit 5, I would encourage you to listen to that recording, not just the excerpts from our briefs. Actually listen to the recording. What you hear in there is a much more explicit version of what you're seeing in the text messages here. The predisposition falls along the lines of what Sorto Enamorado, this court said, which was that there is a demonstrated zeal that that can be enough for active, enthusiastic participation. And what I would point to is that three minutes after learning her age, which was really early on in the conversation, the defendant asked for her photo. Three minutes after learning her age, he's like, what's your photo? Can you send me a photo? Not like, whoa, that's too young for me, or what are you doing on this adult site, or anything like that. It's all about, send me a photo. Then it's, you look very pretty. He starts in on complimenting her, wanting to keep the conversation going. And keep in mind that demonstrated zeal is shown here in the fact that this went from ground zero from the first minute to the arrest. It was two hours and 14 minutes. I think that alone shows active, enthusiastic participation in demonstrated zeal, just as this court in Sorto says, and just as Davila, Knope, Young all articulate. Similarly, when Ashley, the undercover agent, says, when the defendant says, well, I drive a charter bus, and she says, she provides an off ramp, right? She says, well, I guess we can't meet then, right? That is not the government trying to induce her, for sure. He then spins that and says, well, can you see if you can get a ride, or walk to a nearby truck stop. And then once she picks one, he says, let's change it, do a different truck stop, and I'll pay your friend an extra $10. That is active, enthusiastic participation. And as Judge Higginson, you said, and Nelson, defendant's ready and willing participation, standing alone, is sufficient to prove predisposition. If there are no further questions, Your Honors, again, what I would leave you with are the primary cases that I've mentioned over and over again. What specifically are the Sordo case from the Fifth Circuit. That case then cites to two cases. So to the extent that that's an unpublished case by the Fifth Circuit, it does cite to two published decisions by the First and the Eighth Circuit, Davila and Young, respectively. I also provided the Court with the Knope decision, and then I would encourage, Your Honors, even though they're not 2422B cases, but Judge Owen's decision in Gilmore and Judge Higginson's decision in Nelson. And I think all of those create the conclusion or come to the conclusion that there was no inducement, there was sufficient predisposition, and that the defendant did not make a prima facie showing. Every single one of the cases in Judge Higginson asked a pointed question and got the answer I expected, which is there is no such case out there on these facts where entrapment was denied and it was reversible error. Thank you for your time. Your Honors, Mr. Berry put a lot of emphasis on the United States v. Nelson case where enthusiasm standing alone can be enough predisposition to deny an entrapment instruction, but we don't have that situation in this case. In United States v. Nelson, Nelson did not testify as to his state of mind during the government investigation. In this case, Mr. Cawthorn did, and that's the difference. So any defendant can get up and say, I never intended or thought about committing this crime, and we're past that prong. If they take the risk of getting up and testifying and explaining that they had no predisposition, and on top of that, if they don't have criminal history, if there's no evidence that they ever attempted this crime before or any crime like it. Well, what if there's evidence they did? Is the denial of it, does that raise a fact question for a prime faction case or not? It does raise a fact question, Your Honor. Yes, Your Honor. What if they've been convicted before and they said, I was wrongly convicted, I have no predisposition? If there's sufficient evidence that they didn't have predisposition on the day of the investigation, then yes, it should go to the jury. Of course, the government's going to have a much easier time proving predisposition beyond a reasonable doubt if they have a criminal history. So I think it's going to be a non-event in that case. But I think that if it's in a case like Mr. Cawthorn, it could be very significant to the defendant if they have no criminal history. And if they get up and take the risk of testifying on their own behalf and explain to the jury that they were not ready and willing to engage in the crime. But your opposing counsel points out that we found predisposition based on the escalation in the enthusiasm. And so since we've got a recorded conversation here and then you've got his post-arrest statement saying, I knew she was 14, I was coming here to have sex with her. But enthusiasm is not the end of the story. It's just like in the United States v. Theogene. The Fifth Circuit, this court, found that Theogene was enthusiastic. But he got up and testified and explained his state of mind and that he was not ready and willing when the investigation first started. And because of that, the Fifth Circuit found there was sufficient evidence. I thought when this guy testified, it wasn't him saying I just was forced into it. I thought it was, oh, I thought it was all a joke. When I got to her, I was going to see a prostitute or a minor and walk away from either. Eve, at never in any of his statements on the phone, post-arrest, or at trial, does he say, I was reluctant and the government obliged me to go through with this? Well, he did testify that he never intended to have any type of sex with a 14-year-old girl. Okay. So she didn't seem overborn or coerced then. Well, it's my question. I'm back to the hard thing for me because the Internet context is sort of unique. This conversation starts at 920. And as I see it, I'm still interested when the crime is complete. When is the attempt to entice? Would it, in your opinion, be your client's statement, can you get a car? Isn't that what he said? Can you get a ride? He says, okay, do you have a car? But that's before he's even alerted to the fact that she's supposedly 14. Right. No, I can't drive. How old are you, he asks, then 14. But it's later on. I'm just wondering, when is the attempt to entice, to have sexual activity? Looks to me like it would be his affirmative statement, can you get a ride? At that point, knowing her age, he takes a step, an attempt to consummate. So if that's the moment the crime's completed, you've got to show inducement prior to that. I may be wrong. In this conversation, of course it's not a linear conversation, they kind of jump around a lot. They jump around a lot. But he's kind of, it seems like he's just passing time. But then it's the government that constantly urges a meeting. And as I mentioned earlier, there has to be some sort of plan for a meeting in order to accomplish this substantial step. If there's no more questions, I see my time is out. I'll take a seat. Counsel, we know that you're court appointed and we very much appreciate your service. You're welcome. Thank you, Your Honors.